BAMC v. Hyman, 25-11006. Ms. DeGrave here for the appellants, Mr. Jacobs for the appellee, right? Okay. Ms. DeGrave, whenever you're ready, what's your plan for reserving rebuttal time? I would like to reserve three minutes, Your Honor. Okay, very well. Thank you. Yeah, whenever you're ready. Sorry. May it please the Court? I would like to start by addressing the questions raised by the panel about a week ago. First of all, with respect to THPCP, to shorten everything, and BAMC, I've spoken with the clients, and I think we concede that those parties no longer, if they ever did have a stand, have standing, because they stand to gain nothing. However, 1802 does, and its filing of the Notice of Appeal was in accordance with Rule 43B on substitution. The problem is that you actually need to substitute yourself. I mean, there has to be a formal substitution. I looked at the docket after this issue came up. I looked very carefully at the bankruptcy docket. I looked very carefully at the district court docket, and I looked very carefully at our docket, and I see no request to substitute, right? Well, Your Honor, so what happened was the Hyde Park Cafe did participate in the bankruptcy proceedings, and it was the predecessor in interest. And at the time of the bankruptcy orders, it was still the party in interest with respect to the equitable interest. Between that time and the time of filing the Notice of Appeal is when the interest was assigned to 1802, and that's why you see 1802 and not Hyde Park Cafe filing the Notice of Appeal, which I believe is in accordance with Rule 43A-2, which is incorporated into Rule 43B, which says that if a party entitled to appeal dies before filing the Notice of Appeal, the decedent's personal representative, or if there's no personal representative, the decedent's attorney, may file a Notice of Appeal within the time prescribed by these rules. There's no doubt that you're allowed to do it, but then there has to be a substitution that follows it, right? Your Honor, I don't know. So there's the next sentence in 43A-2, which says after the Notice of Appeal is filed, substitution must be in accordance with Rule 43A-1. Now, I don't know, I read that as meaning if instead the previous party in interest files the Notice of Appeal, and then after the Notice of Appeal, the current party in interest must substitute. So what it means is that you can't just have a stranger to the appeal coming in and filing a Notice of Appeal. You have to let the, in other words, you would file the Notice of Appeal to protect yourself if all this happens, but you got to let somebody know, someone along the way, let's you know that this is a problem. Right?  And to that, I would cite to cases such as Mojave Desert Holdings LLC versus Crocs, Inc. That's at 995 F. 3rd, 969. It's a federal circuit case, and in that case, it dealt with a patent review and some of the particular procedures with respect to that, and at all levels, the then current party in interest had not substituted until nearly a year and a half later. And what the courts, what the circuit court said was, under these circumstances, we think that no useful purpose would be served by remanding to the board to add Mojave as the requester, and that the appropriate course is to grant the motion to substitute on appeal. Ah, you just said the key word there, didn't you? Yes. What was the key word there? The motion to substitute. Understood. Okay. Understood. So let, then, if that is the case, 1802 then steps in the shoes of what THPCP would have been, correct? Yes. Well, actually, more correctly, what HPC, Hyde Park Cafe. But that may not help you, because Hyde Park Cafe did not, was not participating in the original objection. They stepped into the shoes of THPCP, right? No, no, my understanding is that Hyde Park Cafe was a party to the objection, along with  the original objection. It was in the reconsideration, but it wasn't, remember, didn't take the property until later. But trust me, you wanted to step in the shoes of both. Right, yes. Okay. All right. Let's talk about the order, now that we got those jurisdictional things taken care of. Let's talk about the order to sell, the arguments targeted to the order to sell, and then the reconsideration, okay? Yes. Because that's where the bulk of this really is, is on the order to sell. All right. As I understand it, what the district court said when the original objections came from THPCP, was that you don't have permission to bring these objections, because you were bringing them on behalf of the estate, and the estate is now represented by a trustee. And then when there was an argument about that, the district court then very helpfully picked up the phone, called the trustee on the phone, and the trustee said, I am not adopting these objections, essentially. I'm paraphrasing, right? Did that, did what I just say? So I think it's actually different than that. Mr. Johnson said, well, there's the sale order that is final and non-appealable as of today, and so therefore I can't object or deny. Right. He didn't adopt the objections. Right. Okay. Then there was a shifting of gears, and then it's, no, no, no, I don't really represent the estate, even though that's where I was doing, even though the district court found that. But okay, I'm not. Now I'm only representing the equity holders. And what the district court then said was, fine, okay, but if that is the case, you need an exception to the automatic stay. And there was none. And so the objection was denied on that ground for THPCP. Then we get to, and then we get to Prescott, who you apparently are also representing, very oddly. And Prescott was even odder, because Prescott says he has no, he doesn't sign the original objection. It doesn't appear as if he even drafts it and doesn't know anything about it. And so it's stricken under the bankruptcy court's rules for pro se filings. Anything I say is inaccurate? Your Honor, I don't think so. I think that there was a discussion about whether it was Mr. Ortiz, Thomas Ortiz, who  Right. Okay. Then a reconsideration is filed. But the problem for reconsideration is, the rule is pretty clear that you can only bring up in reconsideration those things that you could not have brought up earlier. In other words, if there's an argument that you either made or could have made earlier, you can't bring it up in a reconsideration motion. But all of the arguments that we're talking about here, this universe, and I can go through the litany, were arguments that either were brought up in the original objections or could have or should have been brought up and were not. And so my long question, that's the long way of getting, how is the district court wrong in its original denial of the objections for those entities and for those that are still left withstanding? And how is the district court wrong with regard to reconsideration? With respect to the initial, how was it wrong in the first place? With respect to Prescott, and I will say that Mr. Prescott does not necessarily object to a sale under the right circumstances. But here, when the sale order had the effect of stripping him of his lien, his surplus, excuse me, his surplus proceeds rights, his redemption rights, that's where the problem is. And so what you have here is you have the bankruptcy court essentially amending a fully final state court judgment in terms of what the amount of then Wilmington's mortgage claim is with respect to the property. And it's undisputed, I don't think any of the parties dispute that Mr. Prescott has the second mortgage on that. Counsel, I just want to focus you on my question, which is, we're talking about the order of sale. As to that, how is the district court wrong in denying the objections? We'll break it up in parts. The original objections on the two bases for the parties that are left. 1802, stepping in the foot of THPCP and iBARC, and Mr. Prescott. With respect to Mr. Prescott, it would be how the proceeds of the sale are to be distributed to Wilmington with the carve-out. And I understand Apelli's argument about that the carve-out came from Wilmington's share, but Wilmington's share was expanded beyond the amount of the judgment. But how can we say the district court was erred when it struck it based on a rule which says that a pro se party has to sign the document? And here it appears, after some investigation by the district, by the bankruptcy court, that Mr. Prescott had no idea what this thing was about. How is that error to do that, and how can we then resurrect that objection? Your Honor, I would say that the argument was clear. It was, while Mr. Prescott may, after the fact, say, I did not realize what was being said, he very clearly does have that right. It's a matter of record. He may or may not, but he has to assert it, and he has to assert it consistent with the rules of the bankruptcy court. And it's a pretty basic rule under their Rule 11, I think it's 9011, that you've got to sign a document, because you've got to hold someone responsible for the statements that are in that document, for a pro se party. And so, how is it wrong, or error, or abuse of discretion for the district court to have stricken that objection? Well, I think it's wrong in two ways. With respect to the original sale order, you have to look at whether there was notice to all of the parties. I know that there is an issue that there was not notice, for instance, to THPCP and to Hyde Park Cafe. Even though the trustee in the BAMC case was a creditor in the THPCP case, and saw that the THPCP's interest was being sold pursuant to the sale order, still did not put them on notice. I don't know about the notice with respect to Mr. Prescott in the BAMC case, except for that I do know that with respect to the emergency motion to modify, which changed the nature of what was being deeded to another party, to the detriment of Mr. Prescott, there was no notice provided to Mr. Prescott. Why did the district court err, or abuse its discretion in striking or denying the objection regarding TCPHP and its assignees since then, the original objection, because there was no authorization, either the trustee didn't file it, or there was no authorization in representing the equity holders to file that by seeking a stay or an exception to the bankruptcy stay in the THPCP bankruptcy? Two things. One is that with respect to the issue of whether it's Trustee Welch or THPCP who's the proper party to the objection, the exercise of the option was done pre-petition, and so by doing that it took, that became an equitable interest that was not included within the estate. So that's number one. So THPCP was arguably the proper party. And then also, whether it's THPCP or the equity of THPCP, because they hold that equitable interest. But they would need to see a relief from the stay, you would agree? You would need to see a... Seek a relief from the stay. You would agree with that? I'm sorry, who are you asking? The equity holders of THPCP, if they wanted to file their claim in the BAMC bankruptcy, they would have to seek a relief from the stay in the THPCP bankruptcy, would they not? They would have to, no, I don't believe they would. I think that they, what they are saying is that THPCP has this equitable interest that either the trustee Hyman needs to seek to claw back if they want to say that it's not, that it is, that it should be property of the BAMC estate. It's not even a part of BAMC estate, arguably, because it was exercised pre-petition. That's our argument, is that it was not even part of the BAMC estate because it was not exercised pre-petition, because it was exercised pre-petition. So if the trustee Hyman felt like it should have been part of the BAMC case, it was actually incumbent on trustee Hyman to assert a 544 action or a 546 action to claw that back and make that interest part of the estate. So to say that they needed to file a motion for relief from stay, no, they would not need to seek stay relief because it was never part of the BAMC estate in the first place. Okay, very well. You've got some rebuttal time coming. Mr. Jacobs, let's hear from you. Thank you, Your Honors. If it pleases the court. First, we seem to have gotten some of the standing issues out of the way. I don't recall a reference to BAMC, who is also an appellant, and I believe that was the third question that was asked. Your opposing counsel addressed both, said that she agreed that THPCP is now moot given the assignments and that BAMC is not, because of the Chapter 7 trustee, does not have standing in order to assert the interest there. And so we focused on 1802, which is a proper party, but was not properly substituted, which we, I guess, have to address at some point. And then Mr. Prescott, right, that's what we're left with. So if you maybe can pick up where I left off, which is, it seems to me that the original sale order was the objections to the original sort of motion for a sale order. The district court gave two reasons for those two parties that are left. For Mr. Prescott, you didn't sign this thing, and it's unclear who even wrote it, so gone. And for the THPCP, whether as the estate or the equity holders, for the estate, the trustee didn't adopt this thing, and so you can't file it. For the equity holders, you would still need to seek stay relief, not in the BAMC bankruptcy, but in the THPCP bankruptcy, and because you didn't, you can't file, you are not allowed to file this objection, so it's denied. Do I have that right factually? Factually, yes. Okay, why is that legally right or not right? That is all legally correct. Why is that legally correct? As your Honor pointed out, the Rule 9011 requires the document to be signed. It was unequivocally not signed. Mr. Prescott was unaware the document had been filed on his behalf. In fact, I was the one who called Mr. Prescott and announced it to the bankruptcy court that Mr. Prescott was unaware of the objection. So the bankruptcy court struck that, the striking of that objection has never been reconsidered, never sought to be reconsidered. Instead, Mr. Prescott just sought reconsideration of the sale order itself. So Mr. Prescott has no original objection that even passes through to get to the district court that gets to hear, because everything is a reconsideration that was not raised by Mr. Prescott in the first place. Then we get to THPCP either as representing the estate or representing the equity holders. So as your Honor rightfully pointed out, as the equitable interest, we have to dispute whether or not it was really an equitable interest, but whatever interest was owned by the bankruptcy estate and was being managed by Trustee Welch. And since that was an asset of that estate for a non-debtor in possession or for anybody other than the trustee to pursue that asset or that claim, they would have needed stay relief because taking possession or actions to control property estate is a violation of automatic stay. So that would have had to have been done for that party to have proper standing. And even them proceeding on equity, they need some kind of pecuniary interest as an equity of a debtor. I think it's pretty black-letter law based on the questions your Honor has set before us that you need assets to overflow, you need a surplus estate to go to creditors for there to be any standing for equity holders. But I just want to be clear. To the extent that counsel at that moment was representing THPCP's equity holders, did that representation have to get relief from the automatic stay in the THPCP bankruptcy? What I think I hear your opposing counsel saying is the asset that was held, the beneficial or equitable interest in the option, was outside of the bankruptcy. And because it's outside of the bankruptcy, they didn't have to seek stay relief? Is that the argument? I think the argument she was making was that it was outside of BAMC's bankruptcy. And it clearly was, but I don't think that's besides the point. The question is, if you are an equity holder, if let's say you hold an equitable interest in some property, and let's say that's happened before the bankruptcy was filed, so it doesn't come within the estate maybe, does that equity holder still have to seek relief from the automatic stay? Yes, because they're still trying to take possession of rights over an asset that belongs to that bankruptcy. Even if you take this outside of bankruptcy, it's essentially they're trying to seek a derivative right to pursue a claim that belongs to a company that they have the control of. That claim never left that company. So the equity holders, if they were the ones that truly showed up, never had standing to begin with to pursue that claim. So there's no parties here at this point that had a proper objection. I don't want to phrase it in terms of standing, because I think it's at least arguable they did. I mean, what the nature of this was is sort of in dispute. But my question is, the way I read the bankruptcy judge's ruling was the bankruptcy judge denied the objection because there was no permission from the THPCP bankruptcy court, which is the same judge, to have, it wasn't the same judge? I'm sorry. So from that judge to have, to get a relief from the stay in order to pursue the objection, right? Correct. Okay. Then, okay, then we get to the reconsideration. So Mr. Prescott and now Hyde Park on behalf of THPCP files reconsideration motions. Why were those properly denied? Number one, they were probably denied because they raised issues beyond the scope of the original objections, because the original objections were essentially strict. One was strict and one was essentially strict. That's not inherently wrong. In other words, you can, if something new comes up or different comes up, you couldn't have raised that earlier. And so you can do something different from what you did earlier. But I don't believe that's what happened here. This wasn't new information that couldn't have been raised at the time. This was all issues that potentially could have been raised. And I think each of the issues that are discussed by the bankruptcy court were properly ruled on. The biggest issues on the sale order was whether or not it was proper to sell under 363F, whether the free and clear language. And the bankruptcy court went through each of the factors for each of the categories of creditors, and we rightfully met every single one of those factors to get the property sold. We had two of the creditors that consented to the sale. And then Mr. Prescott's claim was under 363F5, where there was another mechanism outside of the bankruptcy court that permitted them to take a monetary satisfaction in support of the claim. And so here, the actual claim that Mr. Prescott has was not a promissory note against the debtor. It was against Mr. Christopher Scott, who was the prior owner of the property. This property was transferred into BAMC shortly before the bankruptcy was filed. And so under 363F5, if Mr. Scott had paid off that judgment to Mr. Prescott, Mr. Prescott would have been compelled to release the lien, because it was no longer a debt associated with it. The bankruptcy court properly found that that was an appropriate use of 363F5. As far as your honors go, notice was an issue that's been brought up many times. The notice in this case was proper. THPCP got proper notice at the mailing address, both under Rule 2002 and under Rule 7004. Adversary Proceeding Rule 7004 permits proper notice by U.S. mail. There's ample evidence in the record that that's what occurred here. I'd also like to point out to the modification order, there were no substantive changes to that order. Everything that was put into that order was done just to appease title insurance to allow the property to close. There were no additional grants other than the 363M protection. But the district court rightfully said, since there was no factual basis for that, we're not going to move the appeal on that basis. Which is the only real protection 363M provides. Other than that, we just added the full legal description of the property. We made it clear that it was free and clear of the potential deed defects that the title company had requested. The original order had already said it was free of all claims, liens, and encumbrances. The title company just wanted this specific reference in there, so it was not adding anything new. And last, it was just allowing the trustee to execute the deed. Obviously, the court had approved the sale. I think it's implicit that the trustee could sign the deed as part of that process, but the insurance company required that specific in there to do the closing. And then last, I think, going back to this kind of, what happens if the appeal is overturned? What is the real relief that is being sought here? Because at the end of the day, I don't think the bankruptcy court can redress any harm that's been alleged. If this court were to send it back and undo the sale, where's that money coming from? There was a title insurance that was paid, title agencies closing costs. How do we get that money back? If we deed the property back, that just puts Wilmington back in a first position with increased interest, increased attorney's fees, and it leads to a foreclosure sale. There's no remedy that this court or the bankruptcy court could make that changes in any beneficial way any of the appellant's rights. There's no real relief that can be granted here. Unless your honors have any further questions for me, I have nothing else to argue. Okay. Very well. Thank you. Mr. Grave? You've got three minutes. I want to go back and address the issue of the, Judge Luck, what you said about the, with respect to the reconsideration, and it has to bring up something new, and specifically with respect to notice to trustee Welch and notice to THPCP with respect to this proposed sale. The reality is that there was no formal notice to trustee Welch. The limitation is the bankruptcy court calling up counsel for trustee Welch at the time of the hearing, and at the time of the hearing, trustee Welch saying that. You're not, you just disclaimed representing the trustee. In other words, you can't represent the trustee, so how could you assert his harm? Well, so with respect to that, so with respect to that, what trustee Welch said was, well, we have this sale. We have this sale that's going to be final and not appealable as of today. There is a buyer. That buyer is Hyde Park Cafe. That notice was never given to Hyde Park Cafe, even though both the bankruptcy and Mr. Hyman were put on notice that there was a sale, and there was a buyer who had an interest in this property, and that party, that buyer was not given notice of any of this. And so then that party participated in the reconsideration. Hyde Park's not before us. Right. Hyde Park is not before us. 1802, its successor in interest is before us. And so with respect to the argument of assuming that 1802 was properly substituted, and I realize that's an issue, but assuming that they were, we're looking at what was Hyde Park's claim? What was Hyde Park's notice? The notice happened, this whole issue, and the trustee was on the phone, all this happened at the hearing. This isn't something that happened subsequent. In other words, it's not a new event that could raise a reconsideration. It actually happened at the hearing itself. The trustee was on the phone. He could have said, I didn't know anything about this. We have no notice of this. Please reset this so that I could be there and raise any objections and notify everybody. But that all happened there. How can you then reconsider the thing that happened in front of the judge? Well, I think that that's a broad characterization of giving them notice. With the judge, with the trustee's counsel on the phone saying, well, you know, we have the sale. I think that what the trustee's counsel is saying is, listen, I'm not the person who can say yes or no, because we have this sale with this buyer. And so why wasn't the buyer reaching? Right, but you're not representing the trustee, and you've explicitly disclaimed it. You represent the equity holders of THPCP, and now they're assignees. And as to them, they clearly had notice. That includes Hyde Park, by the way. Well, I don't know that I think... Hyde Park is the assignee of THPCP. Right, but I don't know that they had notice, a formal notice of the motion to compromise and motion to proceed with the sale. I think that's the issue. That's the issue. That's what we've argued on appeal, is that they didn't have that notice. And with respect to Mr. Jacobs' statement about what could be done here, what we're asking with respect to Mr. Prescott is go forward with the sale, but make sure that he is paid what he is owed, because now he has no lien and no payment from what should have been surplus proceeds. And then with respect to 1802, we remand for a determination of compensation that they should be given. Okay. Very well. Thank you both. The case is submitted, and we'll power on to the fifth case of the day.